Good morning, Your Honor. May it please the Court, Sidney Tribe here on behalf of the appellant, Rolando Hernandez, and I'd like to reserve five minutes for rebuttal, please. There are five issues before the Court this morning, as the Court is well aware. The question of whether Mr. Hernandez exhausted his administrative remedies on his retaliation claim, and then the question of whether summary judgment was appropriate on his retaliation, hostile work environment, disparate treatment, and conspiracy claims. And unless the Court has a preference, I will start with the exhaustion claim. In Lyons v. England, this Court said that allegations that are like or reasonably related to the allegations raised in an EEOC complaint may be raised in federal court if they would have been addressed in the context of the EEOC investigation. And in Lyons, the plaintiffs filed an EEOC charge in 1996, alleging various claims, and then in their federal lawsuit in 1997, included in their claims for relief that they had lost promotions in 1997, almost a year after their charge was filed. Here, this Court, the trial court, said that the claim of retaliation was not reasonably related to the EEOC charge and the claims therein. However, the EEOC charge makes several claims that are like or reasonably related to a claim of retaliation, in fact, directly makes claims involving retaliation. At ER 51.3 in the EEOC charge at page 4, Mr. Hernandez states that after he complained about what he believed was sabotage to his drill and treatment that was based on his race and national origin, he was told that the city attorney would tear his attorneys apart if he tried to make such an allegation in court. Suddenly, he became the subject of discipline where he had not been the subject of discipline before. In the summer of 2002, his supervisor gave him a job application for a private employer, this is all in the EEOC complaint, and said that he had heard that Mr. Hernandez would soon be looking for a new job. Then he was put on administrative leave, and that was also in the EEOC, in which they behaved quite similarly, and yet only Mr. Hernandez was put on leave or disciplined in any way. He filed his EEOC charge with all of these allegations included, and then three days later was given a forced transfer that was essentially a demotion to a previous job he had had with less pay and benefits and prestige. These events contained in the EEOC charge absolutely raise the issue of retaliation, and the trial court's conclusion that Mr. Hernandez had not exhausted his administrative remedies on the retaliation claim was absolutely an error. Moving on to the retaliation claim itself, the trial court did address the three-part test in Manet v. Bank of America, that there must be protected activity, adverse action, and a causal link. The court did not address protected activity or adverse action, and it's clear from the record here that both of those took place. In March of 2002, Mr. Hernandez complained that his work and tools had been sabotaged and that he was receiving unfair treatment and that he believed that it was possibly in his words because he was a Mexican. Then eventually he was disciplined and transferred to a lesser job as a result of that. The court did, however, the trial court stated that there was no evidence, Mr. Hernandez had not presented sufficient evidence of a causal link between these two events. However, the court, despite citing the case, ignored this court's precedent in Ray v. Henderson and Bell v. Clackamas County, in which this court said that even without direct evidence of racial animus, which actually is present in the record in this case, but even putting that aside, proximity in time between a complaint of harassment or racially based mistreatment that is close enough to that retaliation is enough to preclude summary judgment. And in fact, in Ray, this court cited as an example of proximity in time an April 1994 complaint followed by an adverse change in the employee's start times in February 2005, which was ten months later. In this case, we have a man who worked for the city of Vancouver from 1995 until March 2002, and there's no evidence in the record up until that time, those seven years that he worked there, that he was anything but an exemplary and satisfactory employee. His valuations are all in the record. And in 1998, he even won an award for his outstanding work. Then in March 2002, he makes his first complaint to human resources regarding discrimination, and suddenly he becomes the world's worst employee. Within a month, he is beginning to receive reprimands for mistakes in his work. On April 19th, he is reprimanded for mistakes regarding electrical issues. On May 2nd, he is reprimanded for mistakes in a work order. On May 13th, he is given a radio installation assignment, asks for the manual, is declined the manual, installs the radio, and then is written up for incorrectly installing it. On May 14th, he is reprimanded about his brakes. On May 17th, he's written up for installing a part improperly. On May 23rd, he is written up for installing a steering arm backward, even though he tested and corrected that problem immediately. Then on June 4th, he's called into a meeting with human resources to discuss these incidents, and he's put on probation and told that his further work mistakes could subject him to termination. Under the Ray versus Henderson standard, the proximity in time, especially in light of his record of the prior seven years, absolutely established a causal link between his complaints and the adverse action. Applying the McDonnell-Douglas standard, which was incorrectly done because of the direct evidence of discrimination in this case, the trial court then concluded that even if Mr. Hernandez had not been charged with a crime of facial case on retaliation, that the city had set forth a legitimate and nondiscriminatory reason for the adverse action. The trial court does not specify what this evidence is, but considering the allegations in the record that the discipline was essentially trumped up as an excuse to get rid of Mr. Hernandez, this was an incorrect conclusion because it was clear – it is clear from this record that Mr. Hernandez has met his burden to prove that this was purely pretextual. Well, he doesn't have to prove that it was pretextual. He just has to raise a tribal issue of fact. I'm sorry. You're absolutely correct. He has met his burden. We're a summary judgment. We're not at trial. Yes, that's correct. He has met his burden of showing that it was pretextual, and it would be a matter for the jury to conclude what it was. To raise a genuine tribal issue of fact is what your argument is, correct? Correct. That's correct, yes. Moving on to the hostile work environment claim. This case is an unusual hostile work environment case in that there are no allegations in the record that anyone actually said directly to Mr. Hernandez any comments that would be perceived as being racial. Those comments were all behind the scenes. However, the severity and pervasiveness and persistence of the hostile treatment that he experienced was not taken into account by the trial court and was essentially dismissed, even though the trial court was supposed to, under the summary judgment standard, take the facts in the record in the light most favorable to Mr. Hernandez. And if I can just quickly distinguish between what the trial court discussed as evidence in its order as opposed to the evidence that is in the record regarding this hostile treatment, the trial court essentially listed the cold shoulder treatment that Mr. Hernandez had mentioned, the lack of assistance from coworkers claiming that Mr. Hernandez had not produced any specific incidents of that, although he did just that, and I'll get to that in a minute. The sabotage of his work and tools, which the trial court concluded was not done with a racial motivation. Checking personal e-mail on company time and being given the dirtiest jobs, resolving another factual dispute incorrectly, improperly I should say, as to whether or not he did in fact receive work assignments that were the dirty jobs, the jobs that other workers should have been assigned to. However, Mr. Hernandez produced evidence in the record that he was avoided, ostracized and ignored on a daily basis, and he did cite specific incidents such as people turning away from him when he would walk up to speak with them, people turning away when he would be sitting in the break room and not approach him. Those allegations were also corroborated by two of his coworkers, that his coworkers circulated and signed a note not long after Mr. Hernandez had started working for the department claiming that he had a bad attitude and was not a team player, that his coworkers would stop conversing and would disperse when he approached, that other workers and supervisors set him up for failure and gave him misleading information. When he asked specifically about a problem with a truck, he was given misleading information. He was told to install a part that he had explained was all broken and then written up about it, told to ask somebody else when he would ask a question about something that was going on, and then the radio incident where he was told to install it and was not given the manual to do so. He also raised allegations that he would be working and be pulled off doing one job to do another, even though the rest of the employees were standing around and talking, that his supervisor, Mr. Winkler, would stand and stare at him in the break room and watch him while he was on break, and then when the break was over, would yell at him, break's over, and tell him to return to work. There was the terrible incident when his wife came by to visit him only momentarily, and his supervisor came out and asked what she was doing there, asked her to come into the office and discuss the matter, even though he had been off the floor less than a couple of minutes. And in all of these allegations, by the way, there's also no evidence in the record that any other employee was submitted to this treatment. He would be ordered to go back to work while walking up to the computer when other mechanics were not similarly chastised. And there are two important statements in the record that I think it's important for the court to note. Even two of his co-workers, who were not Mexican and who were of Caucasian descent, found the atmosphere in the fire shop sufficiently hostile that even they couldn't stand to work there. His co-worker, John Wadby, says, After three months, I'd had enough. I quit. During my exit interview, I told the exit interviewer about how bad the working environment was in the fire shop. While I had never heard any direct racial statements, I had seen enough to be convinced that Rolando Hernandez was being treated differently because he was a Mexican. This was not solicited. This was not after the fact. This was in his exit interview, which took place more than a year before Rolando Hernandez ever raised any allegation that he had been treated differently because he was Mexican. And his another co-worker, Mr. Wilson, also corroborates these observations. By the fall of 2001, I had had enough. I disagreed with the way the fire shop was being run, and I thought it unfair how they were treating Rolando Hernandez. Hostile work environment claims do not need to involve solely directly racial comments. The court must look at the entire body of evidence to decide if the conduct, both racial and non-racial, was racially motivated. And that is from McGinnis v. GTE. Moving on to the disparate treatment claim, again, a lot of these claims are intertwined, and a lot of evidence is overlapping. So I'll just say that under King v. Ulim of America, Mr. Hernandez was required to produce sufficient evidence that he was in a protected class, performed satisfactorily, subject to an adverse action, and similarly situated employees not treated the same. The trial court concluded that Mr. Hernandez had not raised sufficient evidence to prove this burden, and I think based on the record that's before the court, that was clearly a decision that was an error. Finally, on the conspiracy charge, this is a specific charge that is directly related to the point at which Mr. Hernandez finally decided to take legal action. He called his head or his ‑‑ I'm sorry, his attorney called his former supervisor, who at first confirmed the allegations that Mr. Hernandez had in fact been discriminated against because of his race or national origin, and then contradicted himself and refused to make those statements into the court record. The district court concluded that Mr. Tannion's statements were hearsay and were therefore excluded. And, of course, Mr. Tannion, as a party opponent, his statements were not hearsay. They were also not offered for the truth of the matter asserted. They were offered to demonstrate that he had in fact changed his story. Unless the court has specific questions, I will reserve my remaining time for rebuttal. Thank you. Okay. Good morning, Your Honors. My name is Leanne McDonald. I represent the City of Vancouver and Mark Tannion. The appellant would have you decide today that a genuine issue of material fact can be premised upon conclusory statements, inadmissible hearsay, and contradictory declarations. The State – the most that this case shows, the most that the evidence in this case shows is that there was a personality conflict at the fire shop between Mr. Hernandez and particular people already working there when he got there, primarily John Osborne. Well, counsel, the summary judgment standard is that we give credence to all of the nonmoving parties' evidence. And certainly there is more than your indication that there's very conflicting affidavits. There's a lot of evidence there. If taken in the favor of the nonmoving party, it would seem to say that summary judgment was not the appropriate vehicle here. Your Honor, I don't believe that the information that was provided in the appellant's showing enough evidence to get past the summary judgment. And we don't weigh evidence, do we, on summary judgment? No. I would equate this case to the Vasquez case where a man, a Hispanic man, was told by his supervisor that Mexicans are better off in the field and you would display a macho Hispanic attitude and then subsequently that individual supervisor did transfer him to the field and the court found in Vasquez that that was not adequate, that that did not rise to the level of disparate treatment. What case is that? It's the – excuse me. It's Vasquez. Vasquez v. County of Los Angeles, and that is at 349 F. 3rd, 630-34.  In that case, the court ruled that there was not – that those facts that it just gave you were not sufficient evidence, if believed to prove the fact of discriminatory animus. And the same is true in this case. I don't believe that even if the evidence is – the hearsay evidence that's been submitted is believed, it rises to the level of a showing of discriminatory animus. Well, you call it hearsay, but it isn't necessarily hearsay. The statements of a party opponent are not hearsay. The exit interviews, those statements I don't think are hearsay. They're part of a record. The statement by Mr. Tanninen was made before he – – in the years when that statement was made. And as is stated in our brief at page – It's the Gregory Ferguson affidavit. And Osborne's statement to Tanninen is not hearsay because – or even if you find that Osborne's statement to Tanninen is not hearsay, Tanninen's statement to Ferguson is not admissible because the statement was not made when Tanninen was an agent of the City of Vancouver. He'd already been – he'd already left for two and a half years. Now, I understand your argument about that he was a party opponent, but my – I would submit to you that he was a party opponent only based upon the hearsay that was found to be inadmissible by Judge Burgess. And Judge Burgess's finding of hearsay in footnote 2 in his order is to be given the greatest and the highest deference by this Court, and abusive discretion is the standard there. And that is true even if a finding of hearsay is determinative as to a motion for summary judgment. I thought that hearsay was usually a matter of law. Right, but – We look at whether it was introduced for the truth of the matter, or we look at whether it was a statement of party opponent. Those are not discretionary calls. Well, I would cite you to evidentiary rulings reviewed for an abusive discretion. That's Janes v. Wal-Mart Stores, Inc., 279 F. 3rd, 883. And this is true even where the rulings determine the outcome of a motion for summary judgment, and that's Cabrera v. Cordis Corp. at 143 F. 3rd, 1418. And for there to be an abusive discretion, and for you to find that Judge Burgess engaged in an abusive discretion, you'd have to find that his decision was arbitrary, capricious, whimsical, or manifestly erroneous. And I don't believe that they were – it was any of the above. And I'd like to touch on that topic that you said, that the argument that these statements were made for the – to prove the truth of the matter asserted. And I believe that this case is directly distinguishable from the – excuse me one minute. I want to get the name of the case correct. The Bergeen case. In that case, the defendant employer made the statement through a third – there were two supervisors. One supervisor said to the other, if you – or I guess the statement actually was made directly to the plaintiff. If you pursue your Title VII claim, you're not going to do well in settling the claim that you've made. So basically, that was the matter of the truth asserted. But in this case, the statement made by Mr. Osborne was made purely to prove the matter of the truth asserted, that is, racial animus. And therefore, it is pure hearsay. And I do not believe that there is – Mr. Osborne was not an agent of the city when he said that. There's no proof that he said that as a representative of the city or had any kind of authority on behalf of the city to make a statement like that. Again, I submit to you that that was a statement that was probative of his dislike of Mr. Hernandez. And even if you were to believe the statement that Mr. – or even if you were to believe that it was admissible that what Mr. Osborne said to Mr. Tannenin, Mr. Tannenin is a pro forma party in this case. He – but for this hearsay – Kennedy. Was he a party at the time of this statement? No, Your Honor, he was not. He was – he was – Named later. I'm sorry. He was named later. Yes, he was. He was named later. And the only – if you look at the Section 1985 argument that the – that the plaintiff makes, it's purely evidentiary. So if you can't – if you give the greatest deference to Judge Burgess's ruling regarding the Ferguson affidavit, there is no proof against Mr. Tannenin. He is a straw plaintiff – a straw defendant in this case, and he's here for the purpose of getting this hearsay admitted. Well, let's move off of that and on to your other issues. Okay. We've got a lot of other issues. Thank you, Your Honor. As to the exhaustion issue, the case law cited by the plaintiffs, particularly Lyons and others, deal directly and specifically with situations where the person making the complaint to the EEOC was not represented. Lyons talks about people unskilled in the crafting of complicated pleadings. In this case, and if you look at the actual documents that were submitted to the EEOC, there's a five-page complaint that was drafted with the assistance of Tom Booth, who is and was Mr. Hernandez's attorney. And I would submit to you that the reasons given by the plaintiff or the appellant counsel do not rise to the level of retaliation. And then particularly I would like to draw your attention to the final paragraph of the five-page complaint that was submitted to the EEOC, and I would like to read it to you. It's very short. Quote, while I did not believe so at the outset and I have wanted not to believe it, I now believe that I have been and am being subjected to a hostile workplace due to my national origin in violation of Federal and State civil rights laws. This was written with the help of a plaintiff's lawyer who has been doing plaintiff's work for a very long time. If this was intended to bring up retaliation, that word would be in here. And I would submit to you that when you review, it's tab 513 of the evidence record, you'll see that the facts that are laid out in that piece of the record do not lay a claim for retaliation. I mean, I'm sorry. Yes, go ahead. If the facts themselves evidence retaliation and you didn't use the word, and then there is retaliation after the claim, can't we read this all rather broadly? I believe not, Your Honor. I believe that the case lies clear that the onus is upon the plaintiff to, for each discrete act of discrimination, to update the claim. And this is particularly true in a case where this is not a pro se plaintiff. So if retaliation did occur after the EOC complaint was filed, the onus was upon the plaintiff and the plaintiff's attorney to update the EEOC complaint. You don't think an EEOC investigator would have a – this would have been brought out during an investigation if one had been conducted? I do not, Your Honor. I believe that a fair reading of the five-page complaint that was – I don't mean just reading the complaint, but if you'd gone out to – if you'd gone out and interviewed Mr. Hernandez, do you think it would have been brought out? He might have asked, do you think you've been retaliated or, you know, you got moved to a new division? You were moved to a new unit? No. You don't think the EEOC investigator, based on these allegations, would have asked those questions? Well, that's asking me to speculate, Your Honor. I believe – Well, that's the test, is would it have, you know, would it have been uncovered during the course of an investigation? I believe it would not have been the focus of the investigation, and so – Well, my question was whether it would have been the focus of the investigation. My question. I believe it's possible that some information that looked like retaliation could have come up, but I don't believe that's the standard. All right. Let's see. Regarding the – I'm sorry – hostile work environment, the elements are subjection to verbal or physical conduct because of race, conduct that's unwelcome, and conduct that's sufficient, severe, and pervasive so as to alter the conditions of employment and create an abusive work environment. And again, I would equate this to DeVesque as the county of Los Angeles case. He raised the same claims. He raised disparate treatment, and he raised hostile work environment. And in that case, it was found that a statement, you're a typical macho Hispanic male, Hispanics should be – they do better in the field than a subsequent transfer to the field was not considered to be enough. And also, there's nothing in the record that indicates that anything that occurred in this case was because of Mr. Hernandez's race. It's admitted by the plaintiffs and the appellants that he never heard any kind of racial statement made against him ever. But he did testify that he was given the cold shoulder. He was never given help, even when he asked for manuals, that his drill was sabotaged. Well, the drill sabotaged. The record is clear that what happened is, as they were supposed to do, the city did an immediate investigation through Buzz Horsch and Candy Arada, sent the drill to an independent shop. The independent shop came back and said, the starter's messed up. The record is very confusing. At one point, the plaintiff says that it was a – that the cord had been snipped on his drill. Elsewhere, he says that it was a cordless drill. We know it was a cordless drill because it was one that was attached to a battery, and that's how it was operated. There's also testimony in the plaintiff's deposition that before he left for vacation, he found his sabotage drill. And we do not concede there was ever any sabotage. He found that after returning from a vacation in March of 2002. When questioned by the city, he admitted that just prior to leaving for his vacation, he'd been working on these big, huge batteries that they work on, and that battery acid had gotten on the floor and around his workstation where his tools were. And he had some kind of a solution that he could put on things, and that solution would turn around if there was battery acid around. Well, it's – based upon the record, it's completely conceivable that the battery acid came – was there already. There's no proof in the record, Your Honor, that sabotage occurred. And nothing that would rise to the level of the prime infatia case of any kind of conduct based on race due to alleged sabotage to his equipment. As to the disparate treatment claim, the plaintiff must establish a prime infatia cause of discrimination. One of the biggest factors in this case is that Mr. Hernandez was not performing according to legitimate expectations. And that is factor number two, to be decided under a prime infatia case of discrimination. And I would just like to clarify the record for the Court. So, Judge, you understand the district court judge is having determined as a matter of law that Mr. Hernandez did not make out a prime infatia case? Yes. That's – under our case law, that's a pretty easy hurdle to overcome. I believe it isn't overcome in this case, Your Honor. And then you can move next into, you know, legitimate nondiscriminatory reason, and then the plaintiff comes back with, well, it's just all pretextual and needs to show that there's a genuine triable issue of fact. And I believe what the Court relied upon was the long history of discipline that had been administered to Mr. Hernandez that had nothing to do with any kind of alleged – But it's your position that what he presented didn't even rise to the level of a prime infatia case? Yes, Your Honor. That's your position? Yes. Okay. And I just wanted to clarify for the timeline in terms of what happened. According to the appellant, there was never any kind of discipline leveled against Mr. Hernandez until he raised the issue of race. But, in fact, and actually at the trial level, the plaintiff's attorney goes to great pains to include all these performance evaluations from before Mr. Hernandez was transferred to the fire department. And my – our position is that those aren't relevant to what happened at the fire department, but to the degree that they reflect upon the kind of employee Mr. Hernandez was, I will say that they are relevant. And one of the things that was attached to Mr. Bluth's affidavit in his opposition to our motion for summary judgment was a – a performance evaluation, it was dated December 22nd of 98, that said that Mr. Hernandez needs improvement regarding productivity and teamwork. And, Your Honors, that is exactly the issues he had from day one until he took his transfer back to the operations center. So this was just a precursor of things to come. And then, again, there was a discipline – there was a – there was a performance evaluation done of Mr. Hernandez before any of these claims of sabotage or any kinds of claims of discrimination came up, and that was dated January 4th. And that's – you can – you can find that at the supplemental evidentiary submissions 27. It's the plaintiff's deposition where he was given a poor performance evaluation on January 4th of 2002. Now, that predates the first claim of racial discrimination by several months or a couple of months. Well, that – that goes to the retaliation claim, I guess. Is that right? To the retaliation claim, and also to the issue that he was not performing according to legitimate expectations under the – under his obligation to show a prima facie case of discrimination, that he was – that he was performing according to legitimate expectations. And I have just a very short time, so I want to say one other thing. His transfer was not adverse. If you look at the record, he entered into an agreement with the – with the city, and it is Exhibit 25 to the Affidavit of Tom Booth in Opposition to Motion for Summary Judgment, and it says, The city has agreed to Hernandez's request for the transfer. Mr. Hernandez asked for the transfer back to the operations center where he was happy before. And you know what? He stayed there, and he did fine. Counsel, I just want to ask you, is your position that there is no dispute as to any material fact? That is my position, Your Honor. Okay. Okay, thank you. First, on the hostile work environment claim, Vasquez v. County of Los Angeles, if you look at the actual facts of that case, you have an employee who is subjected to two very offensive but isolated comments by a supervisor over the course of a year. There are no other allegations besides those two isolated comments in Vasquez by the supervisor or by any other coworker, and any other kind of hostile treatment. As far as the record in Vasquez was concerned, other than those two incidents, Mr. Vasquez's work experience was fine. He presented no other evidence of that. The other very distinguishing characteristic between this case and Vasquez, besides the difference in environment, is the fact that the person who concluded that Mr. Vasquez should be transferred to another position was not the person who had made the racial statements, and there was no allegation of any direct racial statements made by that supervisor or by that superior who had actually put the transfer in. So there was no other evidence in the record that Mr. Vasquez's day-to-day work experience or work environment was hostile, and that is a very distinguishing characteristic between these two cases. On the question of the evidence of retaliation, even if you accept the trial court's ruling that Mr. Tanninen's statement regarding Mr. Osborne's statement was in fact hearsay, there is other evidence that the trial court did not exclude of direct racial animus in this case. You have Mr. James and Mr. Streisgath, who are the division and deputy fire chiefs who are directly in charge of the fire shop. And there's evidence that they made racist comments about Hispanics. This is at ER 58.44 and 45, referring to them as, you should call them hose A and hose B, and a comment that, no, you should refer to Mexicans as southerly gentlemen or Hispanics as southerly gentlemen. Those are racist statements that are in this record, that were raised by those in charge of Mr. Hernandez's position that are a direct evidence of racial animus. There's also evidence that one of Mr. Hernandez's coworkers, Mr. Salter, had made a comment that Mr. Hernandez should not be allowed to sue because he's not a United States citizen, again referring to his national origin, made in the presence of Mr. James and Mr. Streisgath, the same gentleman who had made racist comments. He was not contradicted in that claim. Again, there's ample evidence in this record to present both a prima facie case of retaliation and also a claim of pretext. This notion that Mr. Hernandez had had a long history of discipline, we would submit that a comment that you need improvement in a performance evaluation is not a history of discipline. No employee is perfect. The discipline that we are referring to is the discipline where he is pulled aside, where he is reprimanded, where written reprimands are put in his record. There is no evidence whatsoever presented in this case that any of that kind of conduct occurred before he made his first claim of racial discrimination. And finally, on the issue of exhaustion, again, I would just refer this Court back to its holdings in Lyons v. England and then in Joseph v. Pacific Bell. I do recognize that the Supreme Court case of National Railroad Passenger Company v. Morgan has been interpreted by some circuits to conclude that if a subsequent incident has not been included in an EEOC charge, that therefore it is not exhausted. However, Morgan was not an exhaustion case. It was a preclusion case. It was a question of whether incidents that predated the EEOC charge could be included as timely, and that this Court, again, in Joseph v. Pacific Bell, which is subsequent to Morgan, has concluded, again, that if the retaliation claim was reasonably raised in the EEOC charge, that it is properly brought as a part of this action. Again, I have nothing further unless the Court has any questions. I will return the remainder of my time. Thank you. Thank you. We appreciate your arguments, and the case will be submitted.
judges: Fletcher, Paez, Schwarzer